UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| COLOR ME HOUSE, INC., | CASE NO. C12-5935 RJB |
| Plaintiff, | ORDER ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION |
| v. | |
| DISCOVERY COMMUNICATIONS, INC., | |
| Defendant. | |

This matter comes before the court on plaintiff Color Me House, Inc.'s Motion for Preliminary Injunction.  Dkt. 17.  The court has considered the relevant documents and the remainder of the file herein.  Oral argument is not necessary for the court to rule on this motion.

## PROCEDURAL HISTORY AND MOTION

On October 25, 2012, plaintiff Color Me House, Inc. (Color Me House) filed a complaint, seeking injunctive relief and damages, against Discovery Communications, Inc. (Discovery), for Trademark Infringement under 15 U.S.C. § 1051, *et seq;* False Designation of Origin, under 15 U.S.C. § 1125(a); and Unfair Competition under RCW 19.86.  Dkt. 1.

1          On February 28, 2013, Color Me House filed a motion for preliminary injunction,

2    requesting that the court enjoining Discovery and all persons acting in concert from using

3    "COLOR ME" in advertising, marketing, and selling children's cardboard playhouses until the

4    time of trial.  Dkt. 17.  Color Me House first contends that it is likely to succeed on the merits

5    because it owns valid trademarks; and Discovery's use of competing "Color Me" marks is likely

6    to cause confusion.  Color Me House maintains that the marks of Color Me House and of

7    Discovery are similar; the goods are related; the marketing channels are similar; because the

8    goods are inexpensive, consumers will exercise less care; actual confusion exists; Discovery

9    intended to create a likelihood of confusion; Color Me House's marks are strong enough to

10   warrant protection; and the parties' goods are already complete.  Color Me House argues that it

11   is likely to suffer irreparable harm because, in a trademark infringement case, irreparable injury

12   may be presumed from a showing of likelihood of success on the merits; and, in the alternative,

13   the potential loss of goodwill or the ability to control Color Me House's reputation constitutes

14   irreparable harm.  Color Me House maintains that the balance of equities favors Color Me House

15   because Discovery adopted its trademarks only after knowing—both actively and

16   constructively—that Color Me House owned prior rights in "COLOR ME HOUSE" and

17   "COLOR ME ROCKET."  Color Me House contends that the public interest favors an injunction

18   because it would avoid the likelihood of consumer confusion.  Finally, Color Me House requests

19   that the amount of the injunction bond should be minimal because there is no evidence that

20   Discovery will be harmed by an injunction; Color Me House is likely to succeed on the merits;

21   and Color Me House has limited resources.

22         On March 18, 2013, Discovery filed opposition to the motion for preliminary injunction.

23   Dkt. 25.  Discovery first argues that Color Me House's "COLOR ME HOUSE" and "COLOR

24

1   ME ROCKET" trademarks are invalid because Color Me House made representations to the

2   Trademark Office that it was using its mark in interstate commerce on the date the applications

3   were made, when the mark was not at that point used in interstate commerce.  Discovery also

4   argues that, if Color Me House's trademark registrations are valid, there is no continuing use by

5   Discovery of the alleged infringing "Color Me" marks and no willful conduct by Discovery;

6   there is no showing of actual confusion or any reason to believe that Color Me House will be

7   injured if the preliminary injunction is not granted; the marks used by MerchSource up until

8   October of 2011 are not confusingly similar to those of Color Me House; and the balancing of

9   equities do not favor Color Me House because of the actions taken and continuing to be taken by

10  Discovery and MerchSource.  Discovery believes that, before the court grants a preliminary

11  injunction, there should be an evidentiary hearing regarding whether there was fraud in Color Me

12  House's obtaining the registered trademarks and whether there has been actual confusion

13  between Color Me House and Discovery's products.

14          On March 22, 2013, Color Me House filed a reply, contending that (1) Discovery is the

15  proper party to be enjoined because Discovery answered the complaint in its own name and did

16  not mention MerchSource; Discovery asserted counterclaims in its answer; and injunctive relief

17  would bind Discovery's licensees; (2) Discovery has not proved fraud on the part of Color Me

18  House in its applications for COLOR ME HOUSE and COLOR ME ROCKET trademarks; (3)

19  Color Me House has superior common law trademark rights apart from its registrations because

20  it used those marks commercially from September and November of 2008, while Discovery did

21  not release its products until 2010; (4) Color Me House has established evidence of actual

22  confusion because the court may consider hearsay in connection with a motion for preliminary

23  injunction, and because Color Me House has shown a likelihood of confusion; (5) Discovery had

24

1  constructive knowledge of Color Me House's trademark registrations; (6) if not granted an

2  injunction, Color Me House will be irreparably harmed by losing its ability to control its own

3  reputation and goodwill;  (7) because Discovery claims that all use of the subject marks has

4  stopped, it would not suffer harm if the court enjoined the use of those marks, while Color Me

5  House would continue to suffer reputational and market harm if the court denies the motion; (8)

6  the public interest favors an injunction because Color Me House has made a strong showing that

7  it is likely to prevail on the merits of the trademark infringement claims and the public has an

8  interest in avoiding confusion; and (8) Discovery continues to use the infringing trademarks.

9  Dkt. 29.

10                                   RELEVANT FACTS

11        The following facts are found solely for the purposes of this motion for preliminary

12  injunction:

13        In 2008, Color Me House began to advertise, market, distribute, and sell cardboard

14  playhouses, under the trademarks "COLOR ME HOUSE" and "COLOR ME ROCKET."  The

15  "COLOR ME HOUSE" playhouse typically retails for $44.95; the "COLOR ME ROCKET"

16  playhouse typically retails for $54.95.  The target market for Color Me House is parents of young

17  children and those wishing to purchase gifts for young children.  Color Me House maintains that

18  it has sold its playhouses in all fifty states through its website, http://www.ColorMeHouse.com,

19  as well as through 480 Costco stores, thirteen third-party specialty retailers, and online through

20  Amazon.com and Overstock.com.

21        On July 20, 2010, the U.S. Patent and Trademark Office (PTO) issued a federal

22  registration to Color Me House for its COLOR ME HOUSE trademark (Reg. No. 3821356) in

23  International Class 28 for "Play Houses."  On July 20, 2010, the PTO issued a federal

24

registration to Color Me House for its COLOR ME ROCKET trademark (Reg. No. 3821358) in International Class 28 for "Play Houses."  The PTO registered both trademarks on the Principal Register.

In the second half of 2010, Color Me House began to advertise and market a castle-shaped cardboard playhouse under the "COLOR ME CASTLE" trademark.  It described this product on the website as "Coming Soon!" and planned to distribute and sell it in 2011.  Although it began the process,  Color Me House did not complete the process to register "COLOR ME CASTLE" with the Trademark Office.

Discovery maintains a website, http://shop.kids.discovery.com/, that offers children's toys and educational items for sale, including cardboard playhouses, rockets and castles (Cardboard Play Structures).   Discovery licensed the "Discovery Kids" brand to MerchSource, LLC (MerchSource), for use on the Cardboard Play Structures.  MerchSource is the importer of the accused products, and is the sole authorized distributor of the Discovery Kids branded Cardboard Play Structures.  MerchSource is not a defendant in this action.  It is unclear what the relationship between Discovery and MerchSource is.

In 2010, MerchSource began developing, importing and distributing a cardboard playhouse under the "Discovery Kids Color Me Playhouse" mark; and, in 2011, MerchSource began to import/market/sell two other cardboard products under the "Discovery Kids Color Me Castle" and the "Discovery Kids Color Me Rocketship" marks.  MerchSource distributes the Discovery Kids-branded Cardboard Play Structures to retailers that advertise, market and sell the products online and in their retail stores.

Apparently (although it is not completely clear from the record), the Discovery Kids Cardboard Play Structures are/have been advertised, distributed and/or sold in four ways:  (1)

1   through the Discovery website; (2) through the Discovery website that links to other online

2   retailers; (3) through online retailers *via* their own websites; and (4) through brick and mortar

3   retailers.

4          Discovery contends that it first became aware of the existence of Color Me House's

5   trademark registrations on October 1, 2011.  On October 5, 2011, MerchSource instituted a

6   running change into its production, changing all of its product packaging and related materials to

7   remove the term "Color Me."  The product packaging for the Cardboard Play Structures was

8   changed on October 5, 2011, to either "Discovery Kids Color and Play House," "Discovery Kids

9   Color and Play Castle," or "Discovery Kids Color and Play Rocketship."  Dkt. 26, at 2.  Shortly

10  after this case was filed, MerchSource requested that its retailers modify the product descriptions

11  of the Discovery Kids branded Cardboard Play Structures to use the updated product names, and,

12  in some cases, made multiple follow-up requests to the retailers to change the product

13  advertising.  Discovery also instructed the third party service provider that manages the shop

14  portion of its website to correct the product name.

15         Until this lawsuit was filed, MerchSource had no prior contact with, and had received no

16  notice of infringement from, Color Me House.

17         Color Me House contends that Discovery advertises, markets distributes, and sells the

18  Cardboard Play Structures on its website; and through third-party distributors including

19  Amazon.com, Overstock.com, JC Penny, Macy's, Wal-Mart, and Bed Bath & Beyond.  Color

20  Me House states that the links on the Discovery website take potential purchasers to the websites

21  of many third-party distributors (Amazon.com, wal-mart.com, sears.com, JCPenny.com).  Color

22  Me House maintains that the "Discovery Kids EcO-Friendly Color Me PLAY CASTLE" has

23

24

1  been available at the Lacey, Washington, Wal-Mart as recently as February 6, 2013.  Color Me

2  House maintains that Discovery's Cardboard Play Structures cost $12.00 - $29.99.

3         April McCray, founder and owner of Color Me House, stated in a declaration as follows:

4         I have received mistaken inquiries from customers thinking that Color Me House made
          the cardboard playhouses that were advertised, marketed, and sold by Discovery.  For
5         example, a number of upset customers who purchased Color Me House's products
          requested refunds from Color Me House after seeing Discovery's products being
6         advertised and sold at significantly cheaper prices, thinking that Discovery's products
          were ours.  This happened with one of my resellers as well.
7
8  Dkt. 18, at 9-10.

9         Adam Gromfin, general counsel for MerchSource, stated in a declaration, as follows:

10        10.  Unbeknownst to MerchSource until the filing of this case, the Discovery Kids
          branded Cardboard Play Structures were being advertised by retailers using the pre-
          October 2011 product name.
11
12        11.  MerchSource does not control its retailers' advertisements nor does it have any
          control over the retailers' ecommerce websites that sell the Discovery Kids branded
          Cardboard Play Structures.  To modify a retailer's advertising or online product
13        description, MerchSource may request that the retailer make a change; it would remain
          the retailer's prerogative on whether to make a change and how it would like to advertise
14        products.

15        12.  Shortly after the filing of this case, MerchSource requested that all its retailers
          modify the product descriptions of the Discovery branded Cardboard Play Structures to
16        use the updated product name.  Follow-up requests have been made to the retailers to
          change the product advertising.  In some case [sic], multiple requests have been made to
17        certain retailers.

18        13.  Further, while MerchSource has not sold the product since October of 2011, a de
          minimis amount of pre-October 2011 product bearing the name Discovery Kids Color Me
19        Playhouse, Discovery Kids Color Me Castle and Discovery Kids Color Me Rocketship is
          believed to be in inventory at certain retailers as not all retailers shelve and sell product in
20        the order the inventory is received (i.e., they do not have a first-in/first-out policy).

21 Dkt. 26, at 3-4.

22                        STANDARD FOR PRELIMINARY INJUNCTION

23

24

1    The basic function of such injunctive relief is to preserve the *status quo* pending a

2    determination of the action on the merits.  *Los Angeles Memorial Coliseum Com'n v. National*

3    *Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980). A party "seeking a preliminary injunction

4    must establish that the party is likely to succeed on the merits, that the party is likely to suffer

5    irreparable harm in the absence of preliminary relief, that the balance of equities tips in that

6    party's favor, and that an injunction is in the public interest." *Winter v. Natural Resources*

7    *Defense Council*, 129 S.Ct. 365, 374 (2008).   Alternatively, where there are serious questions

8    going to the merits and a balance of hardships that tips sharply toward the plaintiff, a preliminary

9    injunction can be issued, so long as the plaintiff also shows that there is a likelihood of

10   irreparable injury and that the injunction is in the public interest.  *Alliance for Wild Rockies v.*

11   *Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

12                                                DISCUSSION

13   **1. Likelihood of Success on the Merits**

14       A claim for trademark infringement under the Lanham Act, 15 U.S.C. § 1114, may be

15   based on the use of a trademark that is likely to cause confusion, or to cause mistake, or to

16   deceive as to the affiliation, connection, or association of one person with another person.  *See*

17   15 U.S.C. §§ 1114, 1125(a)(1).

18       A plaintiff asserting a claim for trademark infringement must demonstrate that it owns a

19   valid mark and thus a protectable interest, and that the alleged infringer's use of the mark is

20   likely to cause confusion.  *Brookfield Communications, Inc. v. West Coast Entertainment Corp*.,

21   174 F.3d 1036, 1054 (9th Cir. 1999)(citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th

22   Cir. 1979)).

23

24

1    The test for "likelihood of confusion" is whether a "reasonably prudent consumer in the

2    marketplace is likely to be confused as to the origin of the good or service bearing one of the

3    marks." *Surfvivor Media, Inc. v. Survivor Productions*, 406 F.3d 625, 630 (9th Cir. 2005).  When

4    analyzing the likelihood of confusion, courts consider the following eight factors, generally

5    referred to as the *Sleekcraft* factors:  (1) strength of the mark; (2) relatedness of the goods; (3)

6    similarity of the marks; (4) actual confusion; (5) marketing channels; (6) degree of consumer

7    care; (7) the defendants' intent; and (8) likelihood of expansion.  *Id*. at 631 (citing *AMF Inc. v.*

8    *Sleekcraft Boats*, 599 F.2d at 348-49).  The test is fluid, and a plaintiff need not satisfy every

9    factor if there is a strong showing as to some of the factors.  *Id.*  One or more of the factors may

10   be deemed more important than others, depending upon the facts and circumstances of the case,

11   and the eight factors are not exhaustive.  *Brookfield Communications, Inc. v. West Coast*

12   *Entertainment Corp.*, 174 F.3d at 1054.

13       A.  ***Ownership of Trademarks***.  Registration of a mark on the PTO's Principal register

14   constitutes *prima facie* evidence of the validity of the registered mark and of the trademark

15   owner's exclusive right to use the marks on the goods and services specified in the registration.

16   *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d at 1047.  Federal

17   registration of a trademark endows it with a strong presumption of validity.  *KP Permanent*

18   *Make-Up, Inc. v. Lasting Impression I, Inc*. 408 F.3d 596, 604 (9th Cir. 2005).

19       In this case Color Me House's COLOR ME HOUSE and COLOR ME ROCKET

20   trademarks are registered on the Principal Register.  Discovery maintains that the trademarks at

21   issue are invalid because Color Me House filed a fraudulent application with the Trademark

22   Office attesting that the marks had been used in interstate commerce, when,  in fact, they had

23   not.  Ms. McCray stated in a declaration that she filed two trademark application to register

24

ORDER ON PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION- 9

1   COLOR ME HOUSE and COLOR ME ROCKET on June 27, 2008 and September 22, 2008

2   respectively; that she listed dates of first use of those products as shortly before the application

3   were filed; that the Trademark Office refused those applications; that she then retained an

4   attorney to process the applications; that the new applications listed identical dates of first use;

5   and that the applications that proceeded to registration listed dates of first use that were

6   approximately three months before the dates that Color Me House began to be shipped out of

7   state.  Dkt. 30, at 1-3.  Ms. McCray stated that the discrepancy in dates was unintentional, and

8   was the result of her misunderstanding regarding the nature of "use in commerce."  Dkt. 30, at 3.

9   Color Me House maintains that Discovery has not met its burden to establish fraud sufficient to

10  invalidate the trademark registration.

11          The registrations constitute *prima facie* evidence of the validity of the COLOR ME

12  HOUSE and COLOR ME ROCKET trademarks and Color Me House's ownership of them.

13  Discovery has raised issues regarding the validity of those trademarks.  However, at this point,

14  the showing by Discovery is insufficient to invalidate those trademarks based upon fraud.

15  Accordingly, for purposes of this motion, Color Me House has shown that it owns a valid mark

16  and thus a protectable interest.

17          B.  ***Likely to Cause Confusion***.  *Strength of the Mark*.  The strength of a trademark is

18  evaluated in terms of its conceptual strength and commercial strength.  *GoTo.com, Inc. v. Walt*

19  *Disney Co.,* 202 F.3d 1199, 1207 (9th Cir. 2000).  Because commercial strength is based upon an

20  evidence-intensive inquiry, the court cannot determine at this stage which party this factor

21  favors.  *See Network Automation, Inc. v. Advanced Sys. Concepts*, 638 F.3d 1137,1150 (9th Cir.

22  2011).

23

24

ORDER ON PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION- 10

1    *Relatedness of Goods.*  Related goods are generally more likely than unrelated goods to

2    confuse the public as to the producers of the goods.  *Brookfield Communications, Inc.  v. West*

3    *Coast Entertainment Corp.,* 174 F.3d at 1055. The goods at issue in this case are both cardboard

4    play products.  The goods are closely related.  This factor favors Color Me House.

5    *Similarity of Trademarks.*  The more similar the trademarks, the more likely consumers

6    will be confused as to the origin of the associated goods or services.  *See GoTo.com, Inc. v. Walt*

7    *Disney*, 202 F.3d at 1205-06.  In making the comparison, the court considers the marks in their

8    entirety and as they appear in the marketplace.  *Id.* at 1206, *citing Filipino Yellow Pages, Inc. v.*

9    *Asian Journal Publications, Inc.*, 198 F.3d 1143, 1147-50 (9th Cir. 1999).  Similarity is adjudged

10   in terms of appearance, sound, and meaning.  *Id., citing Dreamwerks Prod. Group v. SKG*

11   *Studio*, 142 F.3d 1127, 1131 (9th Cir. 1998).  Similarities are weighed more heavily than

12   differences  *Id., citing Official Airline Guides v. Goss*, 6 F.3d 1385, 1392 (9th Cir. 1993).

13   Color Me House and Discovery cardboard play products both use or used the "Color Me"

14   mark in advertising and on the packaging of the products.  The differences between the parties'

15   marks involve the capitalization/lower case distinction, and the addition of "Play" and "ship" to

16   the marks used by Discovery.  Discovery maintains that Discovery's distinctive "Discovery

17   Kids" trademark is used on the packaging, and that the use of "Discovery Kids" has the potential

18   to reduce or eliminate confusion over the "Color Me" words on the packaging.

19   While addition of  "Discovery Kids" to the packaging of Discovery's products has the

20   potential to reduce confusion somewhat,  "COLOR ME" is the unique feature of Color Me

21   House's trademarks, ascribing an anthropomorphic quality to the cardboard product.  Use of

22   "Color Me" by Discovery appropriates that quality.  The trademarks of Color Me House and

23   Discovery Kids are similar.  This factor favors Color Me House.

24

1    *Actual Confusion.*  A showing of actual confusion among significant numbers of

2    consumers provides strong support for the likelihood of confusion.  *Playboy Enters. V. Netscape*

3    *Communs. Corp.*, 354 F.3d 1020, 1026 (9th Cir. 2004).  Color Me House contends that there has

4    been actual confusion.  Ms. McCray stated that "a number of upset customers" requested refunds

5    after being sold Discovery's products at significantly cheaper prices than those sold by Color Me

6    House, and that this happened with one Color Me House's resellers as well.  Discovery

7    maintains that this "paucity" of hearsay information presented by Color Me House does not rise

8    to the level of establishing widespread confusion.  Color Me House claims that it is a small

9    company; Discovery has not disputed that characterization.  A "number of customers" may be

10   significant to such a smaller company; that number may satisfy the actual confusion with fewer

11   numbers.  Further, whether the consumer requests for refunds are hearsay (an out of court

12   statement made for the truth of the matter asserted) is debatable.  Finally, the "COLOR ME"

13   mark is distinctive enough that there is likely to be consumer confusion, even if the number of

14   consumers actually confused is not great.  Discovery's use of "Color Me" on "Color Me Castle"

15   adds to the confusion; the distinctive "Color Me" used on this product is likely to lead consumers

16   to believe that the product is sold by the same company that produced "COLOR ME HOUSE"

17   and "COLOR ME ROCKET."  For all of these reasons, this factor favors Color Me House.

18   *Marketing Channels.*  Convergent marketing channels increase the likelihood of

19   confusion.  *Nutri/System, Inc. v. Con-Stan Indus., Inc.*, 809 F.2d 601, 606 (9th Cir. 1987).  If the

20   general class of purchasers of the respective products of the parties is the same, confusion is

21   more likely. *Sleekcraft*, 599 F.2d at 353.

22   In this case, Color Me House and Discovery both advertise, market, and sell to the same

23   general class of purchasers:  parents of young children, and those wishing to purchase gifts for

24

ORDER ON PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION- 12

1  young children.  They sell the competing cardboard play products through Amazon.com,

2  Overstock.com, and their own websites (even though Discovery maintains that when potential

3  purchasers access the Discovery website, they are routed to websites of third party retailers, the

4  initial contact is apparently the Discovery website).  The marketing channels are similar.  This

5  factor favors Color Me House.

6       *Degree of Consumer Care*.  Similar trademarks are more likely to result in confusion

7  when the products at issue are of relatively low cost, where buying decisions are made quickly

8  and without extensive study, and where certain consumers are not sophisticated.  *E & J. Gallo*

9  *Winery v. Pasatiempos Gallo*, 905 F.Supp. 1403, 1413 (E.D. Cal. 1994).

10       In this case, the parties' goods are inexpensive cardboard toys.  Color Me House sells its

11  playhouses for $44.95 - $54.95.  Color Me House maintains that Discovery's Cardboard Play

12  Structures cost $12.00 - $29.99.  It is not likely that consumers would likely put considerable

13  thought into their purchasing decisions.  This factor favors Color Me House.

14       *Defendants' Intent*.  The intent factor "favors the plaintiff where the alleged infringer

15  adopted his mark with knowledge, actual or constructive, that it was another's trademark."

16  *Brookfield Communications, Inc. v. West Coast Entertainment Corp.,* 174 F.3d at 1059.

17  Registration of a mark on the Principal Register is constructive notice of the registrant's claim of

18  ownership of the mark.  15 U.S.C. § 1072.  Discovery had constructive notice of Color Me

19  House's registration of the "COLOR ME" mark on the date of registration.  Further, there is

20  some evidence that Discovery had actual knowledge of Color Me House's trademarks when

21  Discovery sold a third play structure under the "Color Me Castle" trademark.  This factor favors

22  Color Me House.

23

24

1    *Likelihood of Expansion.*  Because the goods are already complete, this factor is favors

2    neither Color Me House nor Discovery.

3    *Conclusion.*  Color Me House registered the COLOR ME HOUSE and COLOR ME

4    ROCKET trademarks.  Whether the registrations will be determined to be invalid is an issue to

5    be determined at trial.  However, at this point, those marks are presumptively valid.  The "Color

6    Me" mark used by Discovery to identify and advertize the house, rocket and castle Cardboard

7    Play Structures is likely to cause confusion, because the good are related; the trademarks are

8    similar; the marketing channels are convergent; the products are inexpensive; and Discovery had

9    constructive knowledge, at the least, of Color Me House's trademarks.  Color Me House has

10    made some showing of actual confusion, although the showing is not strong.  On balance, Color

11    Me House has shown that it is likely to succeed on the merits of its trademark infringement

12    claim.

13    **2.  Irreparable Harm.**  Color Me House maintains that the court may presume

14    irreparable injury from a showing of likelihood of success on the merits; that it has suffered

15    irreparable harm by the loss of ability to control its reputation and goodwill; and that actual

16    consumer confusion demonstrates a likelihood of irreparable harm.  Discovery contends that

17    Color Me House has not shown admissible evidence of actual consumer confusion; and that there

18    is no reason to believe that Color Me House will be injured in the event that a preliminary

19    injunction is not granted.

20    Discovery maintains that there is no continuing use of the "Color Me" marks.  Discovery

21    contends that, on October 5, 2011, MerchSource eliminated the "Color Me" mark from its

22    products; after this case was filed, the shop portion of Discovery's website corrected the product

23    name; after this case was filed, MerchSource requested that its retailers modify the product

24

descriptions of the Discovery Kids branded Cardboard Play Structures to use the updated product name; and MerchSource made follow-up requests to the retailers to change the product advertising.  Discovery contends that it has no control over the retailers who sell the products, and how they advertise and label those products.

The record shows consumer confusion, even though the number of consumers is not great.  Color Me House has also shown that it is likely to be injured by the loss of its ability to control its reputation and goodwill.  Although Discovery maintains that it has eliminated the "Color Me" marks on its products and on the products that are distributed through MerchSource, it appears that there are still items being advertised and sold that bear the "Color Me" mark.

Discovery and MerchSource contend that they have no control over how third party retailers advertise and package the Cardboard Play Structures; and that they have contacted third party retailers when they discover an allegedly offending product or advertisement, in an attempt to stop them from using the "Color Me" mark.  To the extent that Discovery argues that the number of allegedly offending products is *de minimis*, and that there are very few third party retailers who are using the "Color Me" mark, a preliminary injunction should not impose an undue burden on Discovery.

The third party retailers who advertise and sell Discovery's Cardboard Play Structures are not parties to this case, nor is MerchSource a party.  The record is not sufficiently developed at this point for the court to determine the legal relationship(s) between Discovery, MerchSource, and third party retailers.   Suffice it to say that there is a commercial, perhaps contractual, relationship among these parties.  The burden at this stage of the proceedings to control the use by Discovery and its licensees or agents of "Color Me" on the advertisements and products should be on Discovery.  Color Me House should not be required to search out every third party

1   retailer and institute a trademark action against alleged infringers.  Color Me House has shown

2   that, absent a preliminary injunction, it is likely to suffer irreparable injury in the absence of an

3   injunction.  However, the scope of the injunction should be narrowly targeted to actions by

4   Discovery, and any party over which Discovery has control, to eliminate use of the "Color Me"

5   mark on advertisements and products within their control.

6         **3.  Balance of Equities.**  Color Me House argues that the balance of equities tips in its

7   favor, as the registrant of the trademark; and that Discovery, as a large business, would be able to

8   absorb any alleged business disruption  a preliminary injunction would cause.  Discovery

9   maintains that the balance of equities favors Discovery, because neither it nor MerchSource

10  engaged in willful infringement; that Color Me House's trademarks are most likely invalid; and

11  that confusion is not likely.

12        Color Me House is the registrant of the "Color Me House" and "Color Me Rocket"

13  trademarks.  Confusion is likely.  Whether Discovery engaged in willful infringement is an issue

14  that should be resolved by trial.  Discovery should be able to absorb any alleged business

15  disruption that a preliminary injunction would cause.  For purposes of this preliminary

16  injunction, the balance of equities tips in favor of Color Me House.

17        **4.  Public Interest.**  Color Me House contends that a preliminary injunction would serve

18  the public's interest in avoiding consumer confusion and in protecting trademarks.  Discovery

19  argues that Color Me House has failed to demonstrate actual confusion or likelihood of

20  confusion; and that, considering MerchSource's voluntary efforts to change the name of its

21  products and product packaging, its efforts to notify retailers of any on-going improper

22  description of goods and to request that all incorrect product descriptions be corrected, and

23

24

1   Discovery's efforts to modify and correct the product name on its website, the public interest

2   does not favor injunctive relief.

3       The public interest in avoiding consumer confusion and in protecting trademarks favors

4   Color Me House.  MerchSource's efforts to change the name of its products and the product

5   packaging, and its efforts to eliminate use of "Color Me" by the third party retailers and on

6   Discovery's website should help to reduce the burden on Discovery to comply with an

7   injunction.  For purpose of this preliminary injunction, the public interest favors Color Me

8   House.

9       **5.  Conclusion**.  Color Me House has met the requirements for preliminary injunctive

10  relief.

11                                    BOND

12      Fed.R.Civ.P. 65(c) provides that "[t]he court may issue a preliminary injunction or a

13  temporary restraining order only if the movant gives security in an amount that the court

14  considers proper to pay the costs and damages sustained by any party found to have been

15  wrongfully enjoined or restrained."

16      Color Me House requests that the court require a minimal bon because it has shown a

17  strong likelihood of success on the merits, it is a small business, and it does not have the

18  resources to purchase a large bond.  The court concurs that a small bond should be required.

19  Color Me House should be required to post $1,000 bond with the Clerk of the Court.

20      Accordingly, it is hereby **ORDERED** that Color Me House, Inc.'s Motion for

21  Preliminary Injunction (Dkt. 17) is **GRANTED**, as follows:

22      1.  Discovery Communications, Inc.; Discovery's employees, agents, and any person or

23  entity over which Discovery has control, are enjoined through the time of trial from displaying,

24

ORDER ON PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION- 17

1  advertising, selling, or offering for sale cardboard play products that use the mark "Color Me" or

2  "COLOR ME."

3      2.  Discovery shall use all reasonable efforts to stop any person or entity with which it has

4  a business relationship, however attenuated, from using the mark "Color Me" or "COLOR ME"

5  on cardboard play products.

6      This preliminary injunction shall take effect on Color Me House, Inc.'s posting of a

7  $1,000 bond with the Clerk of the Court.

8      The Clerk is directed to send uncertified copies of this Order to all counsel of record and

9  to any party appearing *pro se* at said party's last known address.

10      Dated this 27th day of March, 2013.

11

12

ROBERT J. BRYAN
United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

ORDER ON PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION- 18